UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA** ) | **CIVIL ACTION NO.** |
| ) | |
| ) | **JUDGE:** |
| **V.** ) | |
| ) | **MAG. JUDGE:** |
| ) | |
| **CF BREEZE CONSTRUCTION, LLC;** ) | |
| **LISA FOUQUET; AND TROY FOUQUET** ) | |

## COMPLAINT

Plaintiff, Travelers Casualty and Surety Company of America ("Travelers"), by and through undersigned counsel, respectfully submits this Complaint for Indemnity against the Defendants identified above and herein as follows:

### I.
### Parties

1.

Travelers is a corporation organized under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut, from which Travelers' high-level officers direct, control, and coordinate Travelers' corporate activities. Travelers is duly qualified and authorized to transact business within the State of Louisiana.

2.

Made defendants herein are:

a. CF Breeze Construction, LLC ("CF Breeze") which, upon information and belief, is the previously registered name of CF Breeze Management, LLC, which

is a Louisiana limited liability company whose sole member, Lisa Fouquet, is domiciled in Louisiana. CF Breeze may be served through its registered agent: Joshua Fouquet at 16042 Kuhn Road, Covington, LA 70435;

b. Lisa Fouquet who upon information and belief is a major living and residing at 345 Jardin Loop, Covington LA 70433; and

c. Troy Fouquet who upon information and belief is a major living and residing at 16042 Kuhn Road, Covington, LA.

## II.
## Jurisdiction and Venue

3.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as this suit is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.

Venue is properly placed in this Court pursuant to 28 U.S.C. § 1391(a), as a substantial part of the events giving rise to the claim occurred in this judicial district and the defendants also reside in this judicial district.

5.

Citadel Recovery Services, LLC ("CRSC"), CF Breeze, Denzel L. Clark, Sonja S. Clark, Lisa Fouquet, Troy Fouquet, Todd P. Trosclair, All Star Electric, Inc. and Trosclair's Electric and Contractors, LLC (collectively the "Indemnitors") executed a General

Agreement of Indemnity and Additional Indemnitor and Limited Liability Rider ("Indemnity Agreement") in Travelers' favor on September 27, 2018.[1]

6.

Under paragraph 14 of the Indemnity Agreement, the Indemnitors agreed that:

**14. <u>Jurisdiction</u>**: In any legal proceeding brought by or against Company [Travelers] that in any way relates to this Agreement, each Indemnitor, for itself and its property, irrevocably and unconditionally submits to the exclusive jurisdiction, at the sole and exclusive option of Company [Travelers], of the courts in any state in which any Indemnitor resides, has property, or in which any Contract is performed, Indemnitors hereby irrevocably and unconditionally submit to the Jurisdiction of said courts and waive and agree not to assert any claim that they are not subject to the jurisdiction of any such court, that such proceeding Is brought in an inconvenient forum or that the venue of such proceeding is improper.[2]

7.

The Indemnitors are residents and reside in the state of Louisiana.

8.

Pursuant to Paragraph 14 of the Indemnity Agreement, the Indemnitors irrevocably and unconditionally agreed to submit to the jurisdiction of this Court and waived any claim that they are not subject to the jurisdiction of any such court, that this proceeding is brought in an inconvenient forum; or that the venue of this proceeding is improper.

---

[1] A true and accurate copy of the General Agreement of Indemnity and Additional Indemnitor and Limited Liability Rider is attached as Exhibit A.
[2] *Id.*

3

## III.
## Factual Allegations

9.

Travelers is a surety company that issues payment and performance bonds and stands as surety for selected contractors.

10.

CRSC is a contractor in the business of performing construction work.

11.

To submit bids and obtain certain construction projects, CRSC required performance and payment bonds and sought to obtain these bonds from Travelers.

**The Indemnity Agreement**

12.

As Travelers was not willing to assume the sole risk that any failure or default by CRSC might result in loss to it, Travelers required the Indemnitors to execute the Indemnity Agreement with Travelers.

13.

On September 27, 2018, the Indemnitors, individually, executed the Indemnity Agreement attached hereto as Exhibit A to induce Travelers to provide performance and payment bonds for various projects.

14.

Under the Indemnity Agreement, the Indemnitors promised to indemnify and save Travelers harmless from and against all loss which Travelers sustains, incurs, or becomes

4

liable for by reason of having executed bonds on behalf of CRSC or in enforcing the Indemnity Agreement.

15.

Specifically, pursuant to Paragraph 3 of Indemnity Agreement, the Indemnitors jointly and severally agreed that:

> 3. **Indemnification and Hold Harmless**; Indemnitors shall exonerate, indemnify and save Company [Travelers] harmless from and against all Loss. An itemized, sworn statement by an employee of Company [Travelers], or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability. Amounts due to Company [Travelers] shall be payable upon demand.[3]

16.

A "Loss" as used in Paragraph 3 of the Indemnity Agreement, is further defined in the Agreement as follows:

> **Loss** - All loss and expense of any kind or nature, including attorneys' and other professional fees, which Company [Travelers] incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of Company's [Travelers']: (a) making any investigation in connection with any Bond; (b) prosecuting or defending any action in connection with any Bond, including any expenses incurred by Company [Travelers] to defend any extra-contractual claim where there has been no final adverse determination/adjudication of liability against Company [Travelers] on such claim; (c) obtaining the release of any Bond; (d) recovering or attempting to recover Property in connection with any Bond or this Agreement; (e) enforcing by litigation or otherwise any of the provisions of this Agreement; and (f) all interest accruing thereon at the maximum legal rate.[4]

---

[3] *Id.*
[4] *Id.*

17.

In the event of any claim, demand, or suit brought against Travelers under a bond issued on behalf of CRSC, the Indemnity Agreement further vests with Travelers with the right, in its sole discretion,

> to determine for itself and Indemnitors whether any claim, demand or suit brought against Company [Travelers] or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors. Company [Travelers] shall be entitled to immediate reimbursement for any and all Loss Incurred under the belief it was necessary or expedient to make such payments.[5]

**The Project**

18.

In 2017, Hurricanes Irma and Maria caused catastrophic damage to the United States Virgin Islands. To aid in the recovery efforts, the Virgin Islands Housing Finance Authority contracted with prime contractor AECOM Caribe, LLP ("AECOM") to provide various construction repair services (the "Project").[6]

19.

On October 13, 2018, AECOM entered into a Master Subcontract with CRSC, as a sub-prime contractor to assist with the recovery efforts.[7]

---

[5] *Id.*
[6] A true and accurate copy of the Prime Contract between AECOM and the Virgin Islands Housing Finance Authority is attached as Exhibit B.
[7] A true and accurate copy of the Master Subcontract between AECOM and CRSC is attached as Exhibit C.

20.

Travelers as surety furnished Subcontract Performance Bond No. 106990825 and Subcontract Payment Bond No. 106990825 (the "Bonds") to CRSC as principal for the Project.[8]

21.

During the course of the Project, issues arose and a sub-subcontractor, T.J. Sutton Enterprises, LLC, made a claim on the Bonds and filed multiple lawsuits against CRSC and Travelers ("AECOM Caribe Claim").

22.

Travelers incurred a total Loss of $325,157.01 due to the AECOM Caribe Claim.

**Settlement Agreement**

23.

Travelers recorded UCC-1 filings against the Indemnitors related to the AECOM Caribe Claim.

24.

The UCC-1 filings hindered CF Breeze from being able to obtain bonding for different projects.

25.

CF Breeze requested that Travelers remove the UCC-1 filing.

---

[8] A true and accurate copy of the Performance and Payment Bonds is attached as Exhibit D.

26.

Travelers agreed to remove the CF Breeze's UCC-1 filing in exchange for CF Breeze agreeing to pay a third of the total of the AECOM Caribe Claim, or $108,385.67 ("Settlement Payment"). In exchange for CF Breeze making an initial payment of $20,000 and then remitting the remaining balance by March 21, 2024, Travelers would remove the UCC-1 filing ("Settlement Agreement").

27.

Travelers received payment of $20,000 from CF Breeze and removed CF Breeze's UCC-1 recording.

28.

CF Breeze did not remit payment of the remaining balance, $88,385.67.

29.

On August 31, 2024, Travelers sent a demand letter to CF Breeze requesting that the remaining Settlement Payment be sent immediately.[9]

30.

On September 11, 2024, Travelers sent a second demand letter to CF Breeze demanding payment of the outstanding $88,385.67. Travelers indicated that if payment was not received by September 20, 2024, then Travelers would file suit under the terms of

---

[9] A true and accurate copy of the August 31, 2024 correspondence from Travelers to CF Breeze is attached as Exhibit E.

8

the Indemnity Agreement and demand the remaining total of the AECOM Caribe Claim, $305,157.01.[10]

31.

To date, CF Breeze has not remitted payment of the outstanding amount of the Settlement Payment.

**IV.**
**Claims for Relief**

32.

As of the date of this filing, CF Breeze breached the settlement agreement reached with Travelers.

33.

Therefore, Travelers sets forth the following causes of action against the Indemnitors, and pleads that the conditions precedent to recovery, under any theory of law, by Travelers from Indemnitors have occurred or have been performed.

**Count I**
**Contractual Indemnification, Exoneration and Reimbursement**

34.

Travelers hereby restates the allegations contained in the forgoing Paragraphs of this Complaint as if fully set forth herein.

---

[10] A true and accurate copy of the September 11, 2024 correspondence from Travelers to CF Breeze is attached as Exhibit F.

35.

Pursuant to the clear and unambiguous terms of the Indemnity Agreement, Indemnitors are jointly and severally obligated to exonerate, reimburse and indemnify Travelers and to save Travelers harmless from and against all Loss and expense of any kind or nature, including attorneys' fees, which Travelers may sustain or incur by reason of having executed the Bonds or in enforcing the Indemnity Agreement.

36.

Indemnitors have failed to satisfy their indemnity obligations to Travelers under the Indemnity Agreement.

37.

To date, Travelers' Loss from the AECOM Caribe Claim remains $305,157.01.

38.

Travelers received $20,000 from CF Breeze pursuant to the ancillary settlement agreement reached between CF Breeze and Travelers. However, CF Breeze failed to honor the terms of the agreement. Travelers now seeks the outstanding balance of the AECOM Caribe Claim.

39.

By not indemnifying, reimbursing and exonerating Travelers, as provided in the Indemnity Agreement, from all Loss and expense, as set forth herein, which travelers has sustained and incurred by reason of having executed the Bonds and in enforcing the Indemnity Agreement, the Indemnitors are in material breach of the Indemnity Agreement.

40.

Travelers has substantially performed any and all obligations it may have or have had under the Indemnity Agreement and is not in breach thereof.

41.

Travelers' rights under the Indemnity Agreement for indemnification are ongoing. Thus, as Travelers continues to incur Loss and expense, Travelers reserves the right to further supplement its claim for indemnification.

## Count II
## Breach of Settlement Agreement

42.

Travelers hereby restates the allegations contained in the forgoing Paragraphs of this Complaint as if fully set forth herein.

43.

The Settlement Agreement is a valid, binding, and enforceable contract between Travelers and CF Breeze, which remains in full force and effect as of the filing of this action.

44.

CF Breeze bound itself to remit the Settlement Payment to Travelers.

45.

CF Breeze breached the Settlement Agreement by failing to pay $88,385.67 by March 21, 2024.

46.

Travelers has been damaged by CF Breeze's breach of the Settlement Agreement, including without limitation, the unpaid amounts due under the Settlement Agreement.

## Count III
## Attorneys' Fees and Costs

47.

Travelers hereby restates the allegations contained in the forgoing Paragraphs of this Complaint as if fully set forth herein.

48.

Pursuant to the Indemnity Agreement, Indemnitors are liable, jointly and severally, for all attorneys' fees, costs and expenses of whatever nature incurred by reasons of Travelers issuing the Bonds and in the filing of this action to enforce the Indemnitors' obligations under the Indemnity Agreement.

WHEREFORE, after due proceedings are held, Travelers Casualty and Surety Company of America demands judgment against CF Breeze Construction, LLC, Lisa Fouquet, and Troy Fouquet, as follows:

a) That there be judgment requiring Defendants, jointly and severally, to indemnify Plaintiff for all liabilities, losses and expenses, including costs and attorneys' fees, incurred by Plaintiff as a result of Plaintiff having executed payment and performance bonds for CRSC, including the remaining balance of the AECOM Caribe Claim;

b) That there be judgment in Plaintiff's favor and against Defendants, jointly and severally, for all attorneys' fees and costs incurred by Plaintiff in enforcing the Indemnity Agreement;

c) That there be judgment in Plaintiff's favor and against CF Breeze for the remaining balance of the Settlement Agreement;

d) That there be judgment in Plaintiff's favor and against Defendants, jointly and severally, for pre-judgment interest to which Plaintiff is entitled, at the highest rate allowed by law, and all post-judgment interest to which Plaintiff is entitled, at the highest rate allowed by law, from the date of judgment until such judgment is satisfied;

e) For such orders and judgments affecting the obligations of Defendants and the rights of Plaintiff as this Court may find appropriate under the circumstances; and

f) For such other general and specific relief, both at law and in equity, to which Plaintiff may show itself justly entitled.

Respectfully submitted,

**KREBS FARLEY, PLLC**

*/s/* _JMDaily_
CRAIG N. MANGUM (La. Bar No. 36898)
J. MEGAN DAILY (La. Bar No. 37650)
400 Poydras Street, Suite 2500
New Orleans, Louisiana  70130
Telephone:    504-299-3570
Facsimile:     504-299-3582
Email:           cmangum@krebsfarley.com
                    mdaily@krebsfarley.com

ATTORNEYS FOR TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA